THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| SONY COMPUTER ENTERTAINMENT | ) |
| AMERICA INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No.  1:05cv1447 |
| | ) |
| JON W. DUDAS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiffs bring this action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, to obtain judicial review of an agency decision.  Specifically, plaintiffs seek review of a November 17, 2005 decision by the Director of the Patent and Trademark Office (PTO) that "good cause" existed under 35 U.S.C. § 314(c) to suspend the just-commenced *inter partes* proceedings with respect to certain claims in two patents on the ground that the validity and scope of those claims were already the subject of an ongoing appeal in the Court of Appeals for the Federal Circuit. Plaintiffs claim the decision to suspend is arbitrary, capricious and contrary to law, while defendant and intervenor contend, *inter alia*, that the decision to suspend is committed to the PTO's sound discretion, which, in the circumstances, was soundly exercised.

At issue, therefore, on cross motions for summary judgment are the following questions:

(i)     Whether the PTO's decision to suspend the *inter partes* proceedings is a final order subject to judicial review under the APA;

(ii)    Whether the PTO's decision to suspend the *inter partes* proceedings is an unreviewable discretionary decision under the APA;

1

(iii)    Whether the PTO's decision to suspend the *inter partes* proceedings was arbitrary or capricious or contrary to law under the APA, where, as here, parallel litigation was ongoing regarding the validity of the same claims for which the PTO was conducting *inter partes* review; and

(iv)    Whether, once the PTO determined that a substantial question of validity existed as to any claim under the patents in issue, the PTO was obligated to conduct *inter partes* review of all the patent claims, and not just a reexamination of the claims for which Sony had requested review.

## I.

The materials facts are undisputed and may be succinctly summarized.  Intervenor Immersion Corporation ("Immersion") is the owner of U.S. Patent Nos. 6,275,213 ("the '213 patent") and 6,424,333 ("the '333 patent"), both of which relate to providing tactile sensation to users of interactive computer applications such as games.  In February 2002, Immersion sued plaintiffs Sony Computer Entertainment Inc. and Sony Computer Entertainment America Inc. (collectively referred to as "Sony") in the Northern District of California for infringement of the '213 and '333 patents based on Sony's manufacture and sale of the Playstation video games.  After more than two years of litigation, a jury found that Sony had infringed claims 7, 41-46, 49, 50, 53 and 54 of the '213 patent and claims 14-18 of the '333 patent (collectively referred to as "the litigated claims").  The jury also found that Sony had failed to prove that any of the litigated claims were invalid.  As a result of the jury verdict, final judgment was entered in favor of Immersion and against Sony on April 7, 2005, awarding Immersion $82 million in royalty damages.  Post-verdict motions by Sony were filed, and on May 17, 2005, the district court denied those motions.  Sony filed a timely appeal of the district court's decision to the Federal Circuit on June 16, 2005.  That appeal has now been fully briefed and is awaiting oral argument.

On the very day that the California district court entered its order denying Sony's post-verdict motions, Sony filed a request with the PTO for *inter partes* reexamination of the litigated claims of the '333 patent, plus one additional unlitigated claim from that patent. Two days later, Sony filed with the PTO a request for *inter partes* reexamination of the litigated claims of the '213 patent, plus one additional claim from that patent, as well.

Not long thereafter, Immersion, on July 6, 2005, petitioned the PTO to dismiss or suspend the two *inter partes* proceedings claiming that the district court's decision upholding the validity of the litigated claims operated to estop Sony from requesting *inter partes* reexamination of the validity of those claims. Alternatively, Immersion argued that there was good cause pursuant to 35 U.S.C. § 314(c) to suspend the reexamination proceedings to await the outcome of the Federal Circuit appeal.

Sony filed oppositions to Immersion's requests for suspension or dismissal and, on August 17, 2005, before the resolution of the parties' dispute over suspension or dismissal, the PTO granted Sony's reexamination requests, finding a substantial new question of patentability as to each of the claims listed for reexamination. *See In re Mark R. Tremblay, et al.*, PTO Reexamination Proceeding, (August 17, 2005). Then, on August 23, 2005, the PTO resolved Immersion's pending request for suspension or dismissal by denying the request. The PTO explained its decision in this regard by noting that the statutory estoppel would not take effect until the completion of the appellate process in the Federal Circuit and therefore, the PTO could not dismiss or terminate the proceedings on that ground. The PTO also found there was no good cause to suspend the *inter partes* proceedings because claims in addition to the litigated claims were involved. Put differently, the PTO recognized that irrespective of the outcome of the Federal Circuit appeal pertaining to the litigated claims, *inter*

*partes* review would continue for the two unlitigated claims. To foreclose the possibility of piecemeal litigation, the PTO declined to suspend *inter partes* review.[1]

Thereafter, on September 9, 2005, Immersion statutorily disclaimed the two extra unlitigated claims that Sony had included in the requests for *inter partes* reexamination. By disclaiming these extra claims, Immersion relinquished all rights under those claims, with the result that they were eliminated from the *inter partes* reexamination proceedings. Given this change in circumstances, Immersion renewed its petition to suspend the *inter partes* reexamination proceedings on September 9, 2005, and Sony filed its opposition to this renewal motion on September 26, 2005. Sony argued that even if the litigated claims were now the sole subject of the *inter partes* proceedings, the PTO, by virtue of the Manual of Patent Examination and Procedure ("MPEP"), was required to proceed and reexamine all remaining claims in the patents, whether litigated or not.

The PTO rejected Sony's argument and granted Immersion's request to suspend the two *inter partes* proceedings pending resolution of the Federal Circuit appeal. In the PTO's view, the elimination of the two unlitigated claims from the petitions for reexamination meant that the claims that were the subject of the reexamination were now identical to those already under review in the Federal Circuit appeal. The PTO also concluded that because the Federal Circuit appeal was far advanced in comparison to the reexamination proceedings, which had only recently been commenced, there was ample good cause to suspend the reexamination proceedings pending completion of the Federal Circuit appeal. Good cause, the PTO noted, was supported by the statutory estoppel that would operate after completion of the Federal Circuit appeal. *See* 35 U.S.C.

---

[1] The PTO did not address the possibility that a Federal Circuit decision regarding the litigated claims might cast light on the appropriate disposition of the other claims in the reexamination proceedings.

§ 317(b).  In the PTO's words:

> It is not in the [PTO's] and the parties' interests to engage resources in administrative proceedings that ultimately could be mooted by the concurrent litigation [in the Federal Circuit] which is soon to be finally resolved.  That is particularly true here where the administrative proceedings have only just begun.
> *In re Mark R. Tremblay, et al.*, PTO Reexamination Proceeding, (November 17, 2005).

Moreover, the PTO found that Sony was a victim of its own strategic choices, noting that:

> After choosing to go years through the entire district court litigation proceeding without asking for the [PTO's] input, Sony cannot complain that a suspension of the present reexamination proceedings will deprive Sony of a chance to obtain the Office's decision, when there is a strong possibility that the Federal Circuit's decision will estop the Office from issuing any decision at all.  In short, Sony cannot have it both ways. ...  Sony chose its route and must now deal with the consequences of its decision.  *Id.*

Accordingly, the PTO granted Immersion's petition to suspend *inter partes* review of the litigated claims.

Less than a month following the PTO's decision to suspend the *inter partes* proceedings, Sony brought this action on December 13, 2005, arguing that the PTO abused its discretion in suspending the proceedings, as it had a legal obligation to reexamine all claims in the patents (except the two now-disclaimed claims), including those claims not previously litigated.  Nor did the filing of the federal action end activity in the PTO; on the same day that the federal action was filed, Sony filed requests for *ex parte* reexamination of essentially all claims of the two patents, which requests, pursuant to standard PTO procedure, were also assigned control numbers.

Two and a half months later, the PTO on March 9, 2006, found substantial new questions of patentability with respect to certain claims of the two patents.  Specifically, the PTO held that substantial new questions of patentability were present for claims 2, 3, 5, 6, 15-17, 20, 21, and 25

of the '213 patent, and claims 2-9, 12, and 13 of the '333 patent.   Accordingly, *ex parte* reexamination proceedings were ordered with respect to these claims.  Significantly, the March 9, 2006 PTO order found no substantial new questions of patentability for other claims in the patents, as they were the litigated claims and a substantial new question of patentability as to those claims had already been noted in connection with the pending, but suspended, *inter partes* proceedings. Pursuant to statutory procedure, Immersion was to file a patent owners' statement in response to these *ex parte* reexamination orders by May 9, in accordance with 35 U.S.C. § 304.  Sony also petitioned the PTO to request authorization to file additional requests for *inter partes* reexamination of the unlitigated remaining claims of both patents.  Following Immersion's opposition to this request, the PTO, on March 22, 2005, denied Sony's petition in this regard.

At present, therefore, the status of the PTO proceedings is as follows: The *inter partes* reexamination proceedings related to the litigated claims of the '213 and '333 patents are suspended pending resolution of the Federal Circuit appeal, while the *ex parte* reexamination proceedings related to the non-litigated claims in both patents are underway and continuing.

## II.

As background for considering the questions presented, it is useful to set out a brief description of the *inter partes* reexamination procedure.  *Ex parte* reexamination proceedings have been a part of the patent statute since its inception.  *Inter partes* reexamination proceedings are, however, a relatively recent addition to the statute.  In 1999, in response to concerns about the growing volume of patent litigation in federal district courts, Congress passed the American Inventors Protection Act (AIPA) which included, *inter alia*, provisions permitting *inter partes*

reexamination before the PTO.[2]  In this regard, Congress hoped to encourage third parties to resolve patent validity issues extrajudicially disputes by providing a viable, economically attractive alternative to litigation.  *See, e.g.*, Lance G. Johnson, *Inter Partes Rexamination: The USPTO Alternative to Patent Litigation*, 1 No. 2 ABA SciTech Lawyer 12 (Fall, 2004).

The AIPA's *inter partes* provisions significantly enhance the ability of third parties to participate in the patent reexamination procedure beyond the minimal participation allowed in the existing *ex parte* reexamination procedures.  Specifically, *inter partes* reexamination permits third-party requesters (i) to submit a written comment each time the patent owner files a response to an "office action" on the merits issued by the PTO; (ii) to appeal an adverse decision of the patent examiner to the Board of Patent Appeals and Interferences (BPAI); and (iii) to have full participation rights in a patent owner's appeal to the BPAI.  *See generally* 35 U.S.C. § 311 *et seq.*  *Ex parte* proceedings allowed none of this.  Further, *inter partes* proceedings have a much greater preclusive effect than do *ex parte* proceedings: Given the increased opportunities for third party participation in *inter partes* reexamination, AIPA provides for broad estoppel provisions pertaining to *inter partes* reexaminations that do not apply to *ex parte* reexaminations.  In this regard, AIPA mandates that if the party requesting reexamination is unsuccessful in the *inter partes* proceeding, the requester will be estopped from later asserting in any civil action, or in a subsequent *inter partes* reexamination, the invalidity of any claim finally determined to be valid and patentable on any ground the third-party requester raised or could have raised in the *inter partes* reexamination.  *Id.* at § 315(c); § 317(b).

In this case, the questions presented on the merits are (i) whether the PTO's November 17 decision to suspend *inter partes* reexamination of the litigated claims was arbitrary or capricious or

---

[2]Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified as 35 U.S.C. §§ 311-318.

contrary to law under the APA; and (ii) whether, once it determined that a substantial question of validity existed as to any claim under a patent, the PTO was obligated to conduct *inter partes* review of each and every claim of that patent. Before reaching these questions, it is first necessary to address and resolve Immersion's threshold jurisdictional challenges.[3]

### III.

Immersion's jurisdictional challenges raise the following questions: (i) whether the PTO's decision to suspend the *inter partes* proceedings is a final order subject to judicial review under the APA and (ii) whether the PTO's decision to suspend the *inter partes* proceedings is a discretionary decision unreviewable under the APA.

With respect to the first question, the Supreme Court in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), articulated a two-part test to determine if agency action is final. First, agency action is not final unless the decision in issue "mark[s] the consummation of the agency's decisionmaking process." *Id.* at 177; *see also* 5 U.S.C. § 704 (intermediate agency action generally unreviewable). Second, the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Spear*, 520 U.S. at 178. In this case, there is no question that the PTO's November 17, 2005 decision to suspend *inter partes* review was final, as the PTO itself explicitly noted that "[t]his decision is a final agency action within the meaning of 5 U.S.C. § 704." *See In re Mark R. Tremblay, et al.*, PTO Reexamination Proceeding, (November 17, 2005).

It is equally clear that the PTO's decision to suspend *inter partes* review is one "from which legal consequences will follow." *Spear*, 520 U.S. at 178. In this respect, it is clear that once the PTO granted *inter partes* review, it had an obligation to conduct this review with alacrity. *See* 35

---

[3]The PTO took no position on these jurisdictional challenges.

U.S.C. § 314(c) (stating that *inter partes* reexaminations "shall be conducted with special dispatch").

Thus, PTO's obligation in this respect gave rise to Sony's corresponding right to have *inter partes*

reexaminations conducted "with special dispatch," and the legal consequence of the PTO's decision

to suspend its review is that Sony will not receive a prompt consideration of its reexamination

petition.   Indeed, the Federal Circuit has previously reviewed cases in a materially identical

procedural posture.   *See Ethican v. Quigg*, 849 F.2d 1422, 1429 (Fed. Cir. 1988) (reviewing

suspension of PTO's suspension of *inter partes* review).   To be sure, Sony's right to a prompt

reexamination is not absolute; the PTO retains the authority to suspend or terminate *inter partes*

reexaminations "for good cause."   *See* 35 U.S.C. § 314(c).   Irrespective of whether the PTO was

justified in suspending *inter partes* review, it is clear that its decision to suspend review constitutes

a final decision under the APA.

The second threshold question is whether the PTO's decision to suspend *inter partes* review

is committed to the PTO's unreviewable discretion.   *See* 5 U.S.C. § 701(A)(2) (barring judicial

review of agency action committed to agency discretion by law).   Because agency action is

presumptively reviewable, the question is whether the PTO's decision to suspend *inter partes* review

is "one of those rare instances where [the applicable statute] is drawn in such broad terms in a given

case that there is no law to apply."   *Citizens to Preserve Overton Park v. Volte*, 401 U.S. 402, 410

(1971).   Put differently, final agency action is unreviewable only where "a court would have no

meaningful standard against which to judge the agency's exercise of discretion."   *Heckler v. Chaney*,

470 U.S. 821, 830 (1985).   It is clear that the standard Congress provided for suspending *inter partes*

review—good cause—is judicially manageable.   *See Inova Alexandria Hosp. v. Shalala*,  244 F.3d

342, 348 (4th Cir. 2001) (standard of "good cause" is judicially manageable).[4]  Because Congress has provided a judicially manageable standard by which courts can evaluate PTO decisions to suspend *inter partes* review, the PTO's decision at issue here is not committed to the agency's unreviewable discretion, and judicial review of the decision to suspend *inter partes* review is therefore appropriate.

**IV.**

On the merits, the central question presented is whether the PTO's decision to suspend the *inter partes* proceedings was arbitrary or capricious or contrary to law under the APA.  In this regard, Congress has provided that the PTO may suspend *inter partes* review "for good cause."  *See* 35 U.S.C. § 314.  As an initial matter, the PTO has recognized, pursuant to notice and comment rulemaking, that concurrent litigation may provide good cause to suspend *inter partes* reexamination. *See* 37 C.F.R. § 1.987 ("If a patent in the process of inter partes reexamination is or becomes involved in litigation, the [PTO] shall determine whether or not to suspend the inter partes reexamination proceeding.").  While this regulation does not require the PTO to suspend *inter partes* review in every instance where the parties are also engaged in parallel litigation, the mandatory "shall determine" language of the regulation makes clear that whenever parallel litigation does exist, the PTO would abuse its discretion by ***failing*** to consider whether to suspend *inter partes* review. *See id.*; *see also Furnari v. Warden, Allenwood Federal Correctional Inst.*, 218 F.3d 250, 258 (3d Cir. 2000) ("An agency abuses its discretion if it fails to follow its own regulations and

---

[4] *See also Med. Enters., Inc. v. Heckler*, 783 F.2d 1376, 1381 (9th Cir. 1986) (same).

procedures.").[5]    Moreover, it necessarily follows from this regulation that under certain circumstances the existence of parallel litigation would constitute good cause for the PTO to suspend *inter partes* reexamination.

In this case, there is parallel, ongoing litigation in the Federal Circuit.  And importantly, AIPA's reciprocal estoppel provisions make clear that parties challenging patent validity determinations are free to pursue *inter partes* review from the PTO and litigation simultaneously; however, the completion of either process will estop any parallel proceedings.  *See* 35 U.S.C. § 317(b); 35 U.S.C. 315(c).  Put more colloquially, a party can choose to run horses in both races, but the conclusion of one race automatically ends the other; a party cannot ride both horses to conclusion.  Here, the PTO correctly concluded that the two "races" between the parties were at very different stages: The Federal Circuit appeal was nearing its conclusion, while the PTO's *inter partes* review was just beginning.  While the PTO conceded the possibility that the Federal Circuit would reverse the district court and remand for a new trial—thereby potentially effectively starting the litigation process anew—it nonetheless implicitly determined that on balance this possibility did not outweigh the good cause favoring suspension.[6]  Accordingly, the PTO concluded that it would not

_____

[5]*ConnAire, Inc. v. Secretary, U.S. Dept. of Transp.*, 887 F.2d 723, 726 (6th Cir. 1989) (same); *Briggs v. U.S. Parole Com'n.*, 736 F.2d 446, 450 (8th Cir. 1984) (same); *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) (agencies may not violate their own rules and regulations to the prejudice of others); *Wagner v. U.S.*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) (agency bound by its own regulations)

[6]*In re Mark R. Tremblay, et al.*, PTO Reexamination Proceeding, (November 17, 2005) ("As pointed out in Sony's positions and oppositions at pages 5-7, it is uncertain whether the Federal Circuit's decision will affirm the district court's decision and ultimately estop the instant reexaminations of the litigated claims for the '213 and '333 patents.  It is possible that the district court's decision on validity could be reversed or vacated, with a remand for a new trial.
Taking the above positions into account, it is determined that "good cause exists to wait for the outcome of the Federal Circuit appeal... .'")

be prudent to continue *inter partes* reexamination of the litigated claims, since the Federal Circuit

would likely issue a decision that would moot the PTO's reexamination efforts. To decline to

suspend the reexamination, in the PTO's view, would risk wasting resources.  As the PTO put it:

> It is not in the [PTO's] and the parties' interests to engage resources in administrative
> proceedings that ultimately could be mooted by the concurrent litigation [in the
> Federal Circuit] which is soon to be finally resolved.  That is particularly true here
> where the administrative proceedings have only just begun.
> *In re Mark R. Tremblay, et al.*, PTO Reexamination Proceeding, (November 17,
> 2005).

The PTO also explained the reversal of its August 23, 2005 decision in which it initially

declined to suspend *inter parties* review.  In this respect, the PTO noted that since the issuance of

that decision, Immersion had relinquished claim 1 of the '213 patent and claim 1 of the '333

patent—the only non-litigated claims for which the PTO was conducting *inter partes* review.  From

the PTO's point of view, Immersion's relinquishment of these claims was particularly significant

because it eliminated the possibility that the PTO would have to conduct *inter partes* review of some

claims even if the Federal Circuit affirmed the validity of the litigated claims.  Put simply,

Immersion's relinquishment meant that if the Federal Circuit affirmed the district court's validity

determinations before the PTO completed its reexamination, AIPA's estoppel provisions would

render the PTO's efforts moot.  Citing the congruent scope of the two proceedings, the PTO stated

as follows:

> The August 23, 2005 decision recognized that, even if the Federal Circuit upheld the
> district court's validity findings, the 35 U.S.C. § 317(b) estoppel provision would not

---

Also worth noting, as the PTO doubtless knew, is that there is a broad range of potential
Federal Circuit outcomes other than complete affirmance or reversal.  Some claims may succeed and
some may fail on validity grounds, while validity may not even be addressed in whole or in part if
infringement rulings are dispositive.  This range of possible Federal Circuit outcomes further
supports the PTO's sensible "wait and see" suspension decision.

bar reexamination of claim 1, which is not involved in the concurrent litigation. Since the August 23, 2005 decision, ... Immersion has statutorily disclaimed claim 1 in each patent. ... Accordingly, Immersion's elimination of claim 1 in each proceeding aligns the claims and issues when comparing the two reexamination proceedings to the appeal now pending at the Federal Circuit.

Finally, the PTO found that Sony was a victim of its own strategic choices, noting that:

After choosing to go years through the entire district court litigation proceeding without asking for the [PTO's] input, Sony cannot complain that a suspension of the present reexamination proceedings will deprive Sony of a chance to obtain the Office's decision, when there is a strong possibility that the Federal Circuit's decision will estop the Office from issuing any decision at all.  In short, Sony cannot have it both ways. ...  Sony chose its route and must now deal with the consequences of its decision.  *Id.*

Sony seizes on the PTO's comments about Sony's delay in seeking *inter partes* review, concluding that the PTO's decision to suspend reexamination was punitive in nature and therefore not supported by good cause.  Sony misreads the PTO's decision in this respect: The PTO likely referenced Sony's delay in seeking *inter partes* review not to demonstrate that this delay was itself grounds for suspending review, but rather to show that a different result might have obtained had Sony filed its request for reexamination earlier than it did.  While Sony was undoubtedly within its rights to seek *inter partes* review, it does not follow that by granting the request initially, the PTO incurred an absolute obligation to complete the reexamination no matter what.  *See* 35 U.S.C. § 311 (permitting requests for *inter partes* review "at any time").  To the contrary, the plain language of 35 U.S.C. § 314(c) makes clear that the PTO may suspend *inter partes* review for "good cause." Were a contrary result to obtain, parallel litigation would never constitute good cause to suspend *inter partes* review, a prospect directly contradicted by PTO regulations.  *See* 37 C.F.R. § 1.987 ("If a patent in the process of inter partes reexamination is or becomes involved in litigation, the [PTO]

13

shall determine whether or not to suspend the inter partes reexamination proceeding."). Accordingly, the PTO's decision to suspend *inter partes* review of the patent claims in issue here was clearly supported by good cause and therefore well within the bounds of the PTO's discretion.

Yet this does not end the analysis, as Sony argues that the PTO erred in concluding that the Federal Circuit appeal and the reexamination were congruent in scope because the PTO is required to reexamine ***all*** of the patent claims even though the reconsideration petition seeks review of fewer than all of the patent claims.  And because the PTO failed to recognize that the reexaminations necessarily extended to the non-litigated claims, Sony argues further that the PTO's decision to suspend is flawed and constitutes an abuse of discretion.  Sony's arguments are premised on the assumption that the PTO has an obligation to reexamine all of the patent's claims once a substantial question of validity is presented with respect to any one of the patent's claims as to which reexamination was requested.  In this regard, Sony argues that the AIPA, PTO regulations, and the MPEP, each make clear that that once the PTO determines that there is a substantial question of patentability as to any claim of a patent, it is obligated to determine the validity of all the patent's claims—including claims not included in the petition for *inter partes* review.  Sony's arguments regarding AIPA, PTO regulations, and the MPEP are examined separately.

Sony argues that AIPA §§ 313 and 314(a) make clear that the PTO has no discretion to review only certain of a patent's claims in *inter partes* reexamination.  In this regard, Sony notes that in drafting AIPA, Congress was careful to differentiate between "patents" and "claims."  As regards § 313, then, because the statutory language of that section refers to "reexamination of a patent," rather than "reexamination of claims," Sony argues that Congress intended the PTO to examine all claims under a patent once it decides that *inter partes* review of any claims is warranted.  A review

14

of the relevant statutory provisions confirms that Sony's argument is mistaken in this regard.

AIPA §§ 311-313 make clear that *inter partes* reexamination is not an all-or-nothing proposition; rather, the scope of reexamination need not exceed those claims for which *inter partes* review has been requested. To begin with, 35 U.S.C. § 311(b)(2) makes clear that "[t]he request [for *inter partes* review] shall ... set forth the pertinency and manner of applying cited prior art ***to every claim for which reexamination is requested***." (emphasis added). Similarly, § 312 provides that "[n]ot later than 3 months after the filing of a request for inter partes reexamination under Section 311, the [PTO] shall determine whether a substantial new question of patentability affecting ***any claim of the patent*** concerned is raised by the request... ." (emphasis added). By referencing § 311, Congress made clear that the "request" for *inter partes* review mentioned in § 312 is claim-specific, not patent-wide. Section 313 supports the inference that Congress intended *inter partes* review to be claim-specific, as it provides that "[i]f, in a determination made under section § 312(a), the [PTO] finds that a substantial new question of patentability affecting ***a claim of a patent*** is raised, the determination shall include an order for inter partes reexamination for the patent ***for resolution of the question***." (emphasis added). By referencing § 312, which itself references § 311, § 313 makes clear that the scope of the PTO's investigation extends only to those claims (i) for which reexamination has been requested; and (ii) for which the PTO has determined there exists a substantial question of validity. Had Congress intended reexamination to extend to all claims under the patent, it would have left out the final phrase "resolution of the question." Thus, § 313 would have read "... [when] the [PTO] finds that a substantial new question of patentability affecting a claim of a patent is raised, the determination shall include an order for inter partes reexamination for the patent." Yet Congress did not draft § 313 in this manner. Read in conjunction with §§ 312 and

15

311, then, § 313 makes pellucidly clear that the scope of *inter partes* review is limited only to those claims for which review is requested and as to which the PTO finds a substantial question of validity. Because Sony's proffered interpretation would effectively read the final phrase of § 313 out of the statute, it must be rejected. *See Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005) ("It is a classic canon of statutory construction that courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.").

Other sections of the AIPA further confirm that the scope of *inter partes* reexamination is limited to claims for which a party has requested review. In drafting the reciprocal estoppel provisions of § 315(c) and § 317, Congress could have mandated that further validity challenges to an entire patent would be estopped once a validity challenge to one or more claims under the patent had been resolved either through litigation or *inter partes* review, yet it did not do so. Rather, Congress chose to limit the scope of the estoppel, barring only further validity challenges to the specific *claims* the validity of which had been resolved through either litigation or *inter partes* reexamination.[7] Section 318 similarly indicates that the scope of the *inter partes* reexamination is

_____

[7]35 U.S.C. § 315 provides:

A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of **any claim** finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings. (emphasis added).

And, 35 U.S.C. § 317(b) provides:

Once a final decision has been entered against a party in a civil action ... that the party has not sustained its burden of proving the invalidity of any patent claim in suit or if a final decision in an inter partes reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed

claim-specific, and does not necessarily encompass all of a patent's claims.  *See* 35 U.S.C. § 318 ("Once an order for inter partes reexamination of a patent has been issued under section 313, the patent owner may obtain a stay of any pending litigation which involves an issue of patentability *of any claims of the patent which are the subject of the inter partes reexamination order*... .") (emphasis added).

Nor does § 314(a) compel a contrary result.  Section 314(a) provides that "reexamination shall be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133."  Yet, the procedures set out in § 132 and § 133 have nothing to do with the substantive boundaries of a reexamination request; rather, they seek to ensure that patent owners have adequate notice to respond to adverse validity determinations.[8]  While § 314(a) does permit a patent owner "to propose any amendment to the patent and a new claim or claims,"

---

amended or new claim of the patent, then neither that party nor its privies may thereafter request an inter partes reexamination *of any such patent claim* on the basis of issues which that party or its privies raised or could have raised in such civil action or inter partes reexamination proceeding. (emphasis added).

[8]35 U.S.C. 132 provides that:

Whenever, on examination, any claim for a patent is rejected, or any objection or requirement made, the Director shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application... .

And, 35 U.S.C. 133 provides that:

Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Director in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Director that such delay was unavoidable.

it does not follow from this language that the PTO has an obligation to reexamine claims for which reexamination has not been requested.

To be sure, a party may seek, and the PTO may grant, *inter partes* review of each and every claim of a patent.  Moreover, while the PTO in its discretion may review claims for which *inter partes* review was not requested, nothing in the statute compels it to do so.  To ensure that the PTO considers a claim for *inter partes* review, § 311(b)(2) requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review.  Here, it is undisputed that Sony did not seek review of every claim under the '213 and '333 patents.  Accordingly, Sony cannot now claim that the PTO wrongly failed to reexamine claims for which Sony never requested review, and its argument that AIPA compels a contrary result is unpersuasive.

Sony also argues that the PTO misinterpreted its own regulations to permit *inter partes* review of only selected claims.  Specifically, Sony argues that the PTO's failure to reexamine every claim under the '213 and '333 patents contravenes two of its own regulations, 37 C.F.R. §§ 1.937 and 1.104(a).  This argument too fails; it is based on a misreading of the pertinent regulations.  On this issue, it is important to note as an initial matter that the PTO is entitled to wide latitude in construing its own regulations, and its interpretations will not be set aside unless it is "plainly erroneous or inconsistent with the regulation."  *Custom Computer Services, Inc. v. Paychex Properties, Inc.*, 337 F.3d 1334, 1336 (Fed. Cir. 2003).  The question, then, is whether the PTO's interpretation of § 1.937 and § 1.104(a) to permit *inter partes* reexamination of only certain claims under a patent constitutes plain error.

Section 1.937 provides that "[t]he inter partes reexamination proceeding will be conducted in accordance with §§ 1.104(a) through 1.116 ..., except as otherwise provided.  Section 1.104(a)

18

provides in pertinent part that:

> The examination shall be complete with respect both to compliance of the application or patent under reexamination with the applicable statutes and rules and to the patentability of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated.

Sony argues that the PTO's use of the word "patent," as opposed to "claims" in § 1.104 makes clear that the PTO cannot limit its *inter partes* reexamination to certain claims under a patent.  Yet § 1.104 cannot be read in isolation; it must be considered along with other regulations governing *inter partes* review, which, *inter alia*, includes § 1.115.  Section 1.115 makes clear that reexamination is limited to those "***claim[s] for which reexamination [was] requested.***"  37 C.F.R. § 1.915 (b)(3) (emphasis added).  Moreover, for the reasons stated previously, the PTO's interpretation of §§ 1.937 and 1.104(a) is consistent with the AIPA, which contemplates that *inter partes* reexamination will be limited to only those claims for which reexamination has been requested.  For these reasons, the PTO's interpretation of §§ 1.937 and 1.104(a) is not plainly erroneous, and Sony's claim in this regard must therefore fail.

Sony's third and final argument in this respect is that the PTO's decision to suspend *inter partes* review was arbitrary and capricious because it contravened the MPEP.  In this regard, Sony relies on MPEP § 2658(IV)(B), which states in pertinent part:

> Although a request for reexamination may not specify all claims as presenting a substantial new question, each "live" claim (i.e., each existing claims not held invalid by a final decision, after all appeals) of the patent will be reexamined.

As an initial matter, it is important to note that the foreword to the MPEP explicitly states that the MPEP "does not have the force of law or the force of rules in Title 37 of the Code of Federal Regulations."  *See* MPEP Foreword.  Thus, the PTO clearly did not intend the MPEP to constitute

an articulation of its policies and practices on par with AIPA or the PTO's own regulations, both of which make clear, for the reasons already stated, that *inter partes* review does not necessarily extend to every claim under a patent. Accordingly, to the extent the MPEP conflicts with AIPA and the PTO regulations governing *inter partes* review, AIPA and the regulations must trump the MPEP.

In any event, this conflict is more apparent than real, because other provisions of the MPEP provisions make clear that the PTO need not always review all of a patent's claims during an *inter partes* reexamination. Specifically, MPEP § 2643 states in pertinent part that:

> If a substantial new question of patentability is found as to any claim, reexamination will be ordered and will ***normally*** cover all claims except for claims that have been finally held invalid in a Federal Court decision on the merits. (emphasis added)

MPEP § 2640 also makes clear that the *inter partes* reexamination does not necessarily encompass all of a patent's claims. It states:

> In the examination stage of the reexamination, ***usually*** all the patent claims will be reexamined, even though the order found a substantial new question of patentability only as to (for example) one of the patent claims. (emphasis added)

Finally, § 2688 also makes clear that *inter partes* reexamination does not necessarily extend to all claims. It provides in pertinent part:

> The inter partes reexamination certificate will set forth the results of the proceeding and the content of the patent following the reexamination proceeding. The certificate will:
> ...
> (G) identify any patent claims not reexamined.

Thus, §§ 2640, 2643, and 2688 make clear that while the PTO will generally reexamine all of a patent's claims once it determines that a substantial question of patentability exists as to one or more of the claims for which *inter partes* reexamination is sought, the PTO has not committed itself to do

so in all cases.  Here, the reason the PTO did not reexamine all claims under the '213 and '333 patents is pellucidly clear: Sony never asked the PTO to do so, as it was required to do pursuant to 35 U.S.C. §311(b)(2).  *See id.* ("The request [for inter partes review] shall ... set forth the pertinency and manner of applying cited prior art ***to every claim for which reexamination is requested***." (emphasis added).

For all these reasons, Sony's argument that the PTO was required to reexamine all claims of the two patents is unpersuasive; the AIPA, PTO regulations and the MPEP do not, individually or collectively, compel the conclusion that the PTO is obligated to reexamine every claim under a patent once it determines that a substantial question of validity exists as to any claim.  It further follows that the PTO did not abuse its discretion in concluding that there was good cause to suspend reexamination of the litigated claims in light of the more advanced Federal Circuit appeal focusing on the same claims and the operation of the statutory estoppel.  Accordingly, the PTO's and intervenor Immersion's motions for summary judgment must be granted, and Sony's motion for summary judgment must be denied.  An appropriate Order will issue.

_____/s/_____

T. S. Ellis, III

United States District Judge

Alexandria, VA
May 22, 2006